**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

KRYSTAL GONZALES,

        Plaintiff,

v.                                                          CIV 19-0018 JB/KBM

ANDREW M. SAUL,[1]
Commissioner of Social
Security Administration,

        Defendant.

# **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on Plaintiff's Motion to Reverse or Remand the Administrative Decision (*Doc. 16*) and memorandum in support (*Doc. 17*) filed on May 20, 2019. Having carefully reviewed the parties' positions and the material portions of the record, the Court recommends that Plaintiff's motion be GRANTED.[2]

**I.**     **Procedural History**

On February 25, 2015, Ms. Krystal Gonzales (Plaintiff) filed applications with the Social Security Administration for a period of disability and disability insurance benefits under Title II of the Social Security Act (SSA), and for Supplemental Security Income

---

[1] Andrew Saul was confirmed as Commissioner of Social Security on June 17, 2019, and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] Judge Browning entered an Order of Reference Relating to Social Security Appeals on August 20, 2019, referring this case to the undersigned Magistrate Judge "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." *Doc. 25*.

under Title XVI of the SSA. Administrative Record[3] (AR) at 223, 232. Plaintiff alleged a disability onset date of March 30, 2009. AR at 223, 232. Disability Determination Services (DDS) determined that Plaintiff was not disabled both initially (AR at 71-72) and on reconsideration (AR at 124-25). Plaintiff requested a hearing with an Administrative Law Judge (ALJ) on the merits of her applications. AR at 151.

Both Plaintiff and a vocational expert (VE) testified during the *de novo* hearing. *See* AR at 33-70. ALJ Michael Leppala issued an unfavorable decision on December 27, 2017. AR at 9-27. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 217-22), which the council denied on December 7, 2018 (AR at 1-8). Consequently, the ALJ's decision became the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II. Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

---

[3] Document 14-1 contains the sealed Administrative Record. *See Doc. 14-1.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

The claimant has the burden at the first four steps of the process to show: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), she is unable to perform her past relevant work. 20 C.F.R §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of her medical impairments." *Ryan v. Colvin*, Civ. 15-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1)). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient [RFC] to perform work in the national economy, given [her] age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

At Step One of the process,[4] ALJ Leppala found that Plaintiff "has not engaged in substantial gainful activity since March 30, 2009, the alleged onset date." AR at 14 (citing 20 C.F.R. §§ 404.1571-1576, 416.971-976). At Step Two, the ALJ concluded that Plaintiff "has the following severe impairments: affective disorder and polysubstance

---

[4] ALJ Leppala first found that Plaintiff "meets the insured status requirements of the Social Security Act through June 30, 2011." AR at 14.

3

abuse disorder." AR at 14 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). The ALJ noted that Plaintiff has the following non-severe impairments: headaches, hepatitis C, and obesity. AR at 15.

At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 15 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). At Step Four, the ALJ considered the evidence of record and found that Plaintiff

> has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to completing simple tasks with routine supervision, can interact appropriately with others on an incidental basis, and can sustain effective attention to simple, repetitive tasks.

AR at 16. ALJ Leppala found that "[t]ransferability of job skills is not an issue in this case because [Plaintiff's] past relevant work is unskilled." AR at 21 (citing 20 C.F.R. §§ 404.1568, 416.968). The ALJ found that Plaintiff can perform the jobs of kitchen helper, hand packager, and commercial cleaner. ALJ at 22. The ALJ ultimately determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, from March 30, 2009, through the date of [the ALJ's] decision." AR at 22 (citing 20 C.F.R. §§ 404.1520(g), 416.920(g)).

### III. Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). A deficiency

4

in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012) (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200).

## IV.   Discussion

Plaintiff raises five interrelated issues in her motion. She argues that the ALJ erred in: (1) failing to consider the impact of her schizophrenia diagnosis at all stages of the evaluation process; (2) failing to comply with the relevant regulations in weighing opinion evidence; (3) discounting her grandmother's testimony; (4) evaluating her mental impairments under the Listings; and (5) giving the state agency opinions greater weight than the treating provider opinions and failing to support his findings with substantial evidence. *See Doc. 17* at 8-22. The Court agrees that ALJ Leppala gave

5

short shrift to the record evidence that supports Plaintiff's diagnosis of a psychotic disorder and turns first to the ALJ's treatment of Plaintiff's treating providers.

**A.    Dr. Scott Jeansonne, D.O.**

Plaintiff argues that ALJ Leppala improperly rejected the opinions of Dr. Scott Jeansonne, D.O., Plaintiff's treating psychiatrist. *Doc. 17* at 9–11.

**1.    The "treating physician rule"** [5]

"The ALJ should accord opinions of treating physicians controlling weight when those opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record; this is known as the 'treating physician rule.'" *Padilla v. Colvin*, No. CV 14-495 CG, 2015 WL 10383109, at *4 (D.N.M. June 29, 2015) (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004)). "A treating physician's opinion is accorded controlling weight because the treating physician has a 'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.'" *Id.* (quoting *Doyal*, 331 F.3d at 762).

If an ALJ decides that a treating physician's opinion is entitled to less than controlling weight, the ALJ must follow two steps. *See id.* at *5. "First, the ALJ must find the opinion to be unsupported by medical evidence or inconsistent with substantial

---

[5] The Court notes that the "treating physician rule" of 20 C.F.R. § 404.1527(c) applies for claims brought before March 27, 2017. For claims filed after March 27, 2017, the rules set forth in § 404.1520c apply for consideration of all medical opinions. *See* 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.").

evidence in the record." *Id.* If the opinion is not well-supported by the medical evidence or if it is "inconsistent with other substantial evidence in the record[,]" the ALJ will not give the opinion controlling weight. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (applying SSR 96-2p, 1996 WL 374188, at *2); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). At the second step of the analysis of a treating physician's opinion, the ALJ "must determine what deference he will accord the opinion after considering the six deference factors listed" in 20 C.F.R. §§ 404.1527 and 416.927. *Padilla*, 2015 WL 10383109, at *4; *see also Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004). The factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Padilla*, 2015 WL 10383109, at *4 (quoting *Watkins*, 350 F.3d at 1300). "When evaluating any medical opinion in the record, the ALJ must give good reasons – reasons that are 'sufficiently specific to make clear to any subsequent reviewers' – for the weight that he ultimately assigns to" those opinions. *Id.* (quoting *Langley*, 373 F.3d at 1119). The ALJ's "determination, like all of his findings, must be supported by substantial evidence." *Id.*

### 2. The ALJ's evaluation of Dr. Jeansonne's opinions

The ALJ noted that "Dr. Jeansonne completed multiple questionnaires in which he opined that [Plaintiff] has moderate to marked limitations in almost all areas of

7

mental work activity, that she has an almost complete inability to function independently outside her home, and that she is basically unemployable." AR at 19 (citing AR at 539-46, 550-59, 633-44). The ALJ gave Dr. Jeansonne's opinions "little weight," however, finding that they were "quite conclusory, providing very little explanation of the evidence relied on. Moreover, his own treatment notes fail to reveal the type of significant abnormalities one would expect if [Plaintiff] were as limited as opined." AR at 20.

At the first step, it appears that the ALJ found Dr. Jeansonne's opinions were not supported by or were inconsistent with the record evidence, due to his conclusion that the treatment records do not reflect "significant abnormalities." AR at 20. At the second step, the ALJ found that Dr. Jeansonne's opinions were "quite conclusory" with "very little explanation of the evidence relied on." AR at 20. Plaintiff contends that the ALJ's analysis was deficient at the second step because his reasoning "is not subject to meaningful review, as [he] cites to no findings that would render Dr. Jeansonne's opinions less accurate." *Doc. 17* at 10.

The ALJ gave little consideration to the six deference factors at the second step of the analysis. With respect to the first, second, and fifth factors, ALJ Leppala noted that Plaintiff began "regularly" seeing Dr. Jeansonne, D.O.,[6] for Buprenorphine therapy in August 2014. AR at 18 (citing AR at 479-522); *see also* AR at 518-21. Buprenorphine is a medication that is prescribed to treat opioid dependency. *Buprenorphine*, SAMHSA,

---

[6] Plaintiff refers to Dr. Jeansonne as her psychiatrist (*see Doc. 17* at 9), but the Court cannot locate any record that identifies him as such. Instead, Dr. Jeansonne's treatment notes are referred to as "Family Practice Notes" (*see, e.g.*, AR at 598), and the First Choice Community Healthcare website simply identifies Dr. Jeansonne as a "medical provider." *See* First Choice Community Healthcare, Belen Health Center, http://www.fcch.com/index.php?page=belen-center (last visited Dec. 3, 2019).

8

https://www.samhsa.gov/medication-assisted-treatment/treatment/buprenorphine (last visited Dec. 3, 2019).

With respect to the third factor, the ALJ found that Dr. Jeansonne's opinions were conclusory and did not explain the evidence he relied on, and that his treatment notes did not reveal significant abnormalities. AR at 20. In summarizing Dr. Jeansonne's treatment notes, ALJ Leppala noted that Dr. Jeansonne treated Plaintiff for substance abuse, depression, and psychosis, and the doctor "repeatedly" noted that Plaintiff exhibited a normal mood, affect, and judgment. AR at 19 (citing AR at 479-529, 560-632). The ALJ noted only one instance of Dr. Jeansonne recording Plaintiff's disclosure of auditory hallucinations (AR at 18 (citing AR at 500-01)), but failed to note that Plaintiff reported hallucinations to Dr. Jeansonne on at least five other occasions. *See* AR at 500 (Dec. 8, 2014 (significant trouble with auditory hallucinations and paranoia)), 503 (Nov. 24, 2014 (reported voices are getting worse, paranoia has increased, increased risperidone dosage)), 506 (Oct. 27, 2014), 509 (Oct. 14, 2014), 512 (Oct. 6, 2014), 527 (May 21, 2015).

The ALJ stated that Dr. Jeansonne opined in March 2016 that Plaintiff "*may have* an underlying schizoaffective disorder that is not drug related." AR at 19 (citing AR at 599) (emphasis added). The Court finds that the ALJ conflated Dr. Jeansonne's statement in March 2016 – that he "discussed with [Plaintiff] and [her] grandmother that there is *substantial evidence* that [Plaintiff] has schizoaffective disorder that is not drug related" – with a statement he made much earlier in their treatment relationship, in October 2014 – "discussed either schizophrenia or result of drug abuse, will make firm diagnosis after [six] months of observation . . . ." *Compare* AR at 599 (emphasis added),

*with* AR at 508. In fact, Dr. Jeansonne noted in September 2014 that because Plaintiff had a negative reaction when she started taking psychotropic medications,[7] her mood disorder was likely a symptom of substance dependence. AR at 517. He stated that he would "monitor and only restart treatment" with psychotropic medications "if absolutely indicated . . . ." AR at 517.

Psychotropic medications were apparently indicated shortly thereafter, as Dr. Jeansonne noted a diagnosis of psychosis and prescribed risperidone[8] on October 6, 2014. AR at 514. Dr. Jeansonne noted on December 18, 2014, that Plaintiff was "hearing no voices on risperidone 5 mg BID" and her psychosis/depression had been "stable [for] 1-2 weeks now . . . ." AR at 497, 499. On February 10, 2015, he authorized a small decrease in risperidone to see how it affected Plaintiff's psychosis diagnosis. AR at 490. In March 2015 he reported that Plaintiff was doing well with the decreased dosage and continued to taper her dosage. AR at 487, 484. On May 21, 2015, Plaintiff again reported auditory hallucinations, and Dr. Jeansonne diagnosed paranoid schizophrenia and added a trial of Geodon.[9] AR at 527-28. Dr. Jeansonne's remaining

---

[7] Psychotropic medications are those "capable of affecting the mind, emotions, and behavior." *Medical Definition of Psychotropic drug*, MedicineNet, https://www.medicinenet.com/script/main/art.asp?articlekey=30807 (last visited Dec. 3, 2019).

[8] Risperidone is a psychotropic medication "used to treat certain mental/mood disorders (such as schizophrenia, bipolar disorder, [and] irritability associated with autistic disorder)." *Risperidone*, WebMD, https://www.webmd.com/drugs/2/drug-6283-2034/risperidone-oral/risperidone-oral/details (last visited Dec. 3, 2019); *see also Commonly Prescribed Psychotropic Medications*, National Alliance on Mental Illness Minnesota, https://www.healthpartners.com/ucm/groups/public/@hp/@public/documents/documents/entry_194823.pdf (last visited Dec. 3, 2019).

[9] Geodon is an antipsychotic medication "used to treat certain mental/mood disorders (schizophrenia/bipolar disorder). This medication can decrease hallucinations and help [an individual] to think more clearly and positively . . . , feel less agitated, and take a more active part in everyday life." *Geodon*, WebMD, https://www.webmd.com/drugs/2/drug-20575/geodon-oral/details (last visited Dec. 3, 2019).

records list one of Plaintiff's diagnoses as either paranoid schizophrenia or schizoaffective disorder, unspecified. *See, e.g.*, AR at 525 (June 4, 2015 (paranoid schizophrenia)), 600 (Feb. 5, 2016 (schizoaffective disorder)). He also wrote a letter in November 2016 for Plaintiff's "disability case" and stated that he "observed that [Plaintiff] absolutely suffers from primary psychotic disorder that is not [a] result of substance abuse." AR at 551; *see also* AR at 549.

Aside from these treatment records and diagnoses, the ALJ also blatantly ignored certain statements in Dr. Jeansonne's questionnaires and treatment records that help explain his opinions. In July 2015, Dr. Jeansonne filled out a medical questionnaire and stated that he witnessed Plaintiff experience paranoid and auditory hallucinations in the clinic, and her grandmother reported the same to him. AR at 540. In November 2016, Dr. Jeansonne noted that Plaintiff "clearly has schizoaffective disorder by DSM V criteria that has been manifest independent of substance abuse or during the typical withdrawal phase that can be seen with opiate cessation. This can be corroborated by urine drug screens and witnessed psychotic behavior in clinic over the last 2-3 years." AR at 549; *see also* AR at 599 (similar statement made in March 4, 2016 treatment note).

ALJ Leppala did not specifically touch on the fourth factor, consistency of Dr. Jeansonne's opinion with the record as a whole. *See* AR at 19-20. As the Court notes in the next section, the ALJ may need to reevaluate this factor in light of Mr. Montenery's opinion.

The Court finds it troubling that Dr. Jeansonne submitted "multiple questionnaires" detailing the moderate and marked limitations he opined based on an

11

almost-three year treatment relationship, but the ALJ failed to discuss any of the opinions specifically. *See* AR at 19-20 (citing AR at 539-46 (July 2015 Questionnaire), 550-51 (November 2016 letter), 552-59 (November 2016 Questionnaire), 633-44 (May 2017 Questionnaire). Because the ALJ mischaracterized Dr. Jeansonne's diagnosis (incorrectly citing Dr. Jeansonne as stating that Plaintiff *may have* a schizoaffective disorder when he actually said there is *clearly substantial evidence* of such a disorder) and ignored other statements and records that would have supported Dr. Jeansonne's opinions, the undersigned recommends that the Court find that the ALJ erred in evaluating this treating physician's opinions and reverse for further proceedings.

### B. John Ryan Montenery, LMHC

Plaintiff argues that the ALJ failed to properly consider the opinion of treating counselor John Montenery, who opined that Plaintiff has marked limitations in performing her activities of daily living; in maintaining social functioning; and with regard to concentrating, persisting, or maintaining pace. *See Doc. 17* at 10-11; AR at 538. Although Mr. Montenery is a "treating source," he is not an "acceptable medical source" and, therefore, his opinion is not entitled to controlling weight. *See* SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

ALJ Leppala gave Mr. Montenery's opinion "little weight" because he "failed to provide support for his opinions[,]" and "he apparently relied quite heavily on the subjective report of symptoms and limitations provided by [Plaintiff], . . . seem[ing] to uncritically accept as true most, if not all, of what [she] reported." AR at 20. Because the ALJ found "good reasons for questioning the reliability of [Plaintiff's] subjective complaints[,]" he discounted Mr. Montenery's opinion. AR at 20.

Plaintiff argues that this reasoning was insufficient because the "ALJ may not discount findings which are based on subjective psychological complaints given the fact that the practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements." *Doc.* 17 at 10-11 (citing *Miranda v. Barnhart*, 205 F. App'x 638, 641 (10th Cir. 2005)). The Court agrees. "The practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements. A psychological opinion need not be based on solely objective 'tests;' those findings 'may rest either on observed signs and symptoms **_or_** on psychological tests.'" *Mendoza-Martinez v. Colvin*, No. CV 14-1151 CG, 2016 WL 795743, at *8 (D.N.M. Feb. 25, 2016) (emphasis added) (quoting *Thomas v. Barnhart*, 147 F. App'x 755, 761 (10th Cir. 2005)). Mr. Montenery presumably based his opinion on his multiple, in-person interactions with Plaintiff. *See* AR at 432-40 (Apr. 15, 2014), 441-45 (Jan. 22, 2015), 446-48 (Apr. 22, 2014), 449-52 (Aug. 8, 2014), 453-58 (Dec. 9, 2014), 462-64 (June 18, 2014), 465-66 (Mar. 26, 2014). And though ALJ Leppala discounted the opinion because he found Plaintiff's subjective complaints were not entirely supported by the record, the Court noted above that those complaints were at least partially substantiated by Dr. Jeansonne's observations. In short, the ALJ failed to give any legitimate reasons to discount Mr. Montenery's opinion. Accordingly, the undersigned recommends that the Court find that the ALJ also erred in evaluating Mr. Montenery's opinion.

### C. State Agency medical sources

Plaintiff contends that the ALJ improperly gave "great weight" to two state agency medical opinions. *Doc. 17* at 11. She notes that the opinions, dated May 27, 2015, and December 31, 2015, were rendered "prior to the existence of most of the evidence." *Id.*

13

The Court notes that the state agency physicians would not have had the benefit of Dr. Jeansonne's and Mr. Montenery's opinions, but they would likely have seen much of the hospital and other treatment records that were accumulated prior to May 2015. However, because the undersigned recommends remanding for reevaluation of Dr. Jeansonne's and Mr. Montenery's opinions, the ALJ should also reevaluate the weight given to the state agency opinions.

### D. Janet Morrison

The ALJ also discounted testimony from Janet Morrison, Plaintiff's grandmother, because "she is not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency of intensity of unusual moods or mannerisms . . . ." AR at 20. He also said that "by virtue of [her] relationship" with Plaintiff, she "cannot be considered a disinterested third party witness whose testimony would not tend to be colored by affection for [Plaintiff] and a natural tendency to agree with the symptoms and limitations [Plaintiff] alleges." AR at 20. Finally, the ALJ discounted the testimony because it was "simply not consistent with the preponderance of the opinions and observations by medical doctors in this case." AR at 20.

Plaintiff argues that the ALJ erred, but she cites no authority to support this argument. *Doc. 17* at 12-13. "In the Tenth Circuit, an ALJ is not required to make specific, written findings regarding each lay witness's opinion when the written decision reflects that the ALJ considered the testimony." *Osborn v. Colvin*, No. CIV 15-1069 KBM, 2016 WL 9774957, at *9 (D.N.M. Dec. 19, 2016) (quoting *Croley v. Colvin*, Civ. No. 12-1101-JWL, 2013 WL 615564, at *5 (D. Kan. Feb. 19, 2013)). "Instead, '[t]he

14

decision must reflect that the ALJ included the opinion in his consideration of disability, but he need not specify the weight accorded to that opinion. Nonetheless he may do so in explaining the rationale for his decision." *Id.* (quoting *Croley*, 2013 WL 615564, at *6) (brackets omitted). The ALJ did not err in evaluating Ms. Morrison's testimony.

### E. The impact of schizophrenia

Plaintiff contends that ALJ Leppala failed to consider her schizophrenia at all stages of the evaluation process (*Doc. 17* at 8-9) and that his findings under the Listings of Impairments "are inconsistent with those of" Mr. Montenery and Dr. Jeansonne (*id.* at 13-17). The undersigned recommends that the Court direct the ALJ to reevaluate his conclusions regarding schizophrenia and the related symptoms in light of his reevaluation of Dr. Jeansonne and Mr. Montenery's opinions.

### F. Step Five

Finally, Plaintiff argues that the ALJ erred at Step Five, because the RFC did not "consider the debilitating impact of [her] auditory hallucinations[,]" paranoia, and her social functioning limitations "on her ability to function in any work setting." *Id.* at 18. Given the Court's recommendations herein, the undersigned would advise that the ALJ reconsider his Step-Five findings on remand.

### G. Title II claim

Plaintiff mentions in a footnote that she moved to amend her onset date to February 25, 2015, and dismiss her Title II claim. *See id.* at 5 n.3; AR at 168. The ALJ did not mention this in his decision, but Plaintiff fails to allege error and has not preserved this issue for the Court.

ALJ Leppala observed that Plaintiff had "allege[d] disability since 2009, [but] there is no evidence of treatment prior to 2014." AR at 18. It appears, then, that the ALJ may have considered this fact negatively in making his conclusions about Plaintiff's limitations. *See id.*; *see also*, *e.g.*, AR at 117 (reconsideration determination that the Title II claim is "denied for insufficent [sic] evidence"). Had Plaintiff been allowed to dismiss her Title II claim and amend her onset date to February 25, 2015, the absence of records prior to 2014 may not have been a weighty factor. *See* SSR 83-20, 1983 WL 31249, at *1 (Jan. 1, 1983) (noting that determination of "the onset date is critical" because under Title II, "disability insurance benefits . . . may be paid for as many as 12 months before the month an application is filed[,]" while in Title XVI cases, "there is no retroactivity of payment"). Thus, the undersigned recommends that the Court direct the ALJ to address Plaintiff's motion to dismiss her Title II claim and amend her onset date.

## V. Conclusion and Recommendation

I recommend the Court find that the ALJ did not adequately evaluate the opinions of Dr. Jeansonne and Mr. Montenery. I further recommend that the Court direct the ALJ, on remand, to reassess his findings about the impact of schizophrenia and its related symptoms on the Listings of Impairments and at Step Five.

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion to Reverse or Remand the Administrative Decision (*Doc. 16*) be granted.

_____
UNITED STATES MAGISTRATE JUDGE

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**